Yusuf **BARRIE**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 02–CF–319.

District of Columbia Court of Appeals.

Submitted Nov. 3, 2005.

Decided Nov. 23, 2005.

---

3. No formal disciplinary action was initiated in this court on the basis of the conviction.

Sylvia F. Hardy, appointed by the court, was on the brief for appellant.

Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Luis Andrew Lopez, and Bernard J. Delia, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and KRAMER, Associate Judges, and NEBEKER, Senior Judge.

PER CURIAM:

The appellant challenges the trial court's denial of his motion to suppress evidence. Specifically, he claims that there was not probable cause to conduct the warrantless search and seizure that preceded his arrest, and therefore the evidence obtained from that allegedly unconstitutional search should be suppressed. We affirm.

Following his indictment on the charge of Possession with Intent to Distribute Cocaine, the appellant filed a motion seeking to suppress the evidence supporting the government's case. The sole witness at the suppression hearing was Park Police Officer Kurt Hansen. His testimony was that at around 4:30 p.m. on the day in question, a confidential informant had called and told him that he had just witnessed a drug sale inside of a market located at Seventh and O Streets, N.W., that the drugs were packaged in green bags, and that the seller was wearing a yellow hooded sweatshirt under a black jacket. At that point, Officer Hansen, who was in an undercover vehicle with another officer, drove to Seventh and O Streets, N.W. Upon their arrival, the officers parked in a nearby parking lot, and the informant got into their car. About a minute later, the appellant emerged from the Seventh and O Street Market, fitting the description previously given, and the informant identified the appellant to the officers as the seller. Officer Hansen then notified an arrest team who stopped and searched the appellant, finding several small green bags filled with crack cocaine in his hat.

At the motions hearing, Officer Hansen testified at length about his experience with the informant. That testimony was that over the course of the twelve months preceding the call in this case, he had worked with the informant on twenty-five

cases and had found him to be reliable in all. Moreover, the informant had been working with the Park Police for approximately twenty years, and he had never given unreliable information, although not all of his information had resulted in an arrest. Officer Hansen testified that the informant was employed, that he was not on probation or parole, that he had no criminal convictions since 1985,[1] and that he did not abuse drugs or alcohol. The informant had been paid fifty dollars for the information in this case.

At the conclusion of the hearing on the motion to suppress, the trial court denied the motion.[2] Subsequently, the appellant pleaded guilty, reserving his right to appeal the trial court's denial of his motion to suppress evidence. See Super. Ct. Crim. R. 11(a)(2) (2005). We affirm.

■ The appellant argues that the trial court erred in finding that probable cause existed for the search and seizure. In support of this position, the appellant contends: (1) the informant mistakenly "indicated the suspect to be wearing a yellow hooded sweatshirt when in fact [the appellant] did not have on a yellow hooded sweatshirt, but a black jacket .... with a hood which was yellow colored;" (2) "it is unknown how far away the informant was from the suspect when he allegedly observed this drug deal;" and (3) "the informant could not tell Hansen where [on his person] the suspect had placed the 'stash' [of drugs] after the alleged sale."

■ In reviewing the denial of a motion to suppress evidence, we must view the evidence in the light most favorable to the prevailing party. (Dexter) Davis v. United States, 781 A.2d 729, 734 (D.C. 2001) (citing Flores v. United States, 769 A.2d 126, 129 (D.C.2000)). "[T]he trial court's legal conclusion on probable cause," however, is reviewed de novo. Ball v. United States, 803 A.2d 971, 974 (D.C. 2002) (citing Green v. United States, 662 A.2d 1388, 1389 (D.C.1995)). See also (Dexter) Davis, supra, 781 A.2d at 734.

■ The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Fruits of a warrantless search incident to an arrest are nonetheless permitted if a law enforcement officer has probable cause to arrest, "which arises when a reasonably prudent police officer, considering the total circumstances confronting him and drawing from his experience, would be warranted in the belief that an offense has been or is being committed." Nixon v. United States, 870 A.2d 100, 103 (D.C.2005) (citing Peterkin v. United States, 281 A.2d 567, 568 (D.C. 1971)) (internal quotations omitted).

■ In reviewing whether an informant's tip provided probable cause, a judicial officer should consider the totality of the circumstances, taking into account "an informant's 'veracity,' 'reliability,' and 'basis of knowledge.'" Illinois v. Gates, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As we said in Parker v. United States, 601 A.2d 45, 49 (D.C. 1991), "Along with an informant's basis of knowledge of criminal activity, the infor-

---

1. One of the convictions from the 1980's had been for Threats and another for Unauthorized Use of a Motor Vehicle. In the year preceding the information provided in this case, the informant had been arrested for a matter arising out a domestic dispute, but that matter had been dropped without any assistance provided from the Park Police.

2. While the record of the oral findings made immediately following the hearing could not be located, the trial court later reconstructed its findings and issued a written order.

mant's general credibility and the reliability of the information he or she provides are important factors in a probable cause assessment." *Id.* (citing *Gates, supra,* 462 U.S. at 229 n. 4, 230, 103 S.Ct. 2317).

Here, the basis of the informant's knowledge was grounded on his own direct observations of the drug sale that he had reported witnessing first-hand mere moments after it occurred. Thus, the police knew from his report that the informant was speaking of his own personal knowledge, not simply from information that he had gleaned from another. Therefore, the "basis of knowledge" factor for establishing probable cause is well satisfied. *See (John Henry) Davis v. United States,* 759 A.2d 665, 670–71 (D.C.2000).

Moreover, the overlapping veracity and reliability factors are particularly strong in this case given the length of time the informant had worked for the Park Police, the accuracy of the information he had provided, his continued employment, his independence from drugs and alcohol, and his current ability to remain out of the criminal justice system. Indeed, standing alone, the fact that the informant was well-known to the police, and thus could be held to account were his information found to be willfully false, gives his report added weight. In *(John Henry) Davis,* relying on *Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), a case involving an anonymous informant, we noted that a "known informant whose reputation can be assessed and who can be held responsible if [his or] her allegations turn out to be fabricated" is generally deemed more credible than an anonymous informant. 759 A.2d at 670. *J.L.,* in turn, had relied upon *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), a case involving an informant whose identity was known to the police, and who, therefore, could be "held responsible." In

*Adams,* the Supreme Court had pointed out that information from a known informant is particularly reliable in jurisdictions where the informant could be prosecuted under a statute making it a crime to knowingly make a false report to the police alleging that a crime has been committed, since such a statute provides an incentive to confine the information provided to the truth. *Id.* at 146–47, 92 S.Ct. 1921. Like the statute relied upon in *Adams,* D.C.Code § 5–117.05 (2005) makes it a crime to give false information to the police knowing that information to be false.

■ The reliability of an informant's tip is also strengthened where police can "independently corroborate" the informant's story. *Parker, supra,* 601 A.2d at 49. In this case, the police were able to "independently corroborate" the informant's story, first by the informant's identification of the appellant immediately after he emerged from the Seventh and O Street Market, and second, by the fact that the suspect was wearing a black jacket with a yellow hood, as described by the informant. Thus, the record supports the trial court's finding that the informant was reliable.

Under the circumstances of this case, the appellant's arguments that there was no probable cause because the yellow hood that the informant described him as wearing during the drug sale was in fact part of his jacket, as opposed to a separate article of clothing (a fact not clearly established by the record), is inconsequential. So too is the appellant's argument based on lack of testimony about how far away the informant was when he observed the drug deal, and the informant's inability to say where on the appellant's person the drugs could actually be found. Looking at the totality of the circumstances, as *Gates* mandates, it is clear that the informant's personal witnessing of the drug transaction, combined with the accuracy of his information with

respect to the appellant's appearance, his opportunity to actually identify the appellant as the correct target before any search took place, his long and reliable history of giving accurate information to the police, his employment, and other positive personal characteristics, as well as his vulnerability to prosecution should his information prove false provided the trial court with an unusually strong record for a finding of probable cause based on an informant's tip. Accordingly, the decision of the trial court is hereby

*Affirmed.*